# EXHIBIT 1

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT - MOTOR VEHICLE TORT - CONTRACT - EQUITABLE RELIEF - OTHER

# COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

**SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CIVIL ACTION NO.** 21-00125

A True Copy Attested
Kitt
Deputy Sheriff

EGAN, FLANAGAN AND COHEN, P.C. , PLAINTIFF(S)

V.

THE HARTFORD d/b/a TWIN CITY FIRE INSURANCE COMPANY and
CHASE, CLARKE, STEWART & FONTANA
, DEFENDANT(S)

**SUMMONS** 3/12/21

Lisa M. Clewes, Registered Agent
Chase, Clarke, Stewart & Fontana, 101 State Street, Springfield, MA 01103

To the above named defendant:

You are hereby summoned and required to serve upon John J. Egan, Esq. & Michael G. McDonough Esq./Egan, Flanagan and Cohen, P.C. , plaintiff's attorney, whose address is 67 Market St., P.O. Box 9035, Springfield, MA 01102-9035 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Springfield either before service upon the plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Judith Fabricant, Esq., at Springfield the ___10th___ day of ___March___ in the year of our Lord two thousand twenty-one.

Laura S. Gentile, Esquire
CLERK OF COURTS

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM No. 1

your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 20____, I served a copy of the within summons, together with a copy of the complaint, in this action, upon the within named defendant, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5):

_____

_____

_____

_____

Dated: _____, 20____

N.B. TO PROCESS SERVER:
PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

(                              )
(                      , 20    )
(                              )

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2179CV00125 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Egan, Flanagan and Cohen, P.C. vs. The Hartford Doing Business as Twin City Fire Insurance Company | Laura S Gentile, Clerk of Courts |
|---|---|
| TO: John J Egan, Esq. Egan, Flanagan and Cohen, PC 67 Market St Springfield, MA 01103 | COURT NAME & ADDRESS Hampden County Superior Court Hall of Justice - 50 State Street P.O. Box 559 Springfield, MA 01102 |

## TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                             DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 06/07/2021 | |
| Response to the complaint filed (also see MRCP 12) | | 07/07/2021 | |
| All motions under MRCP 12, 19, and 20 | 07/07/2021 | 08/06/2021 | 09/07/2021 |
| All motions under MRCP 15 | 05/03/2022 | 06/02/2022 | 06/02/2022 |
| All discovery requests **and depositions** served and non-expert depositions completed | 02/27/2023 | | |
| All motions under MRCP 56 | 03/29/2023 | 04/28/2023 | |
| Final pre-trial conference held and/or firm trial date set | | | 08/28/2023 |
| Case shall be resolved and judgment shall issue by | | | 03/08/2024 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 03/10/2021 | ASSISTANT CLERK Edward Partyka | PHONE (413)735-6016 |
|---|---|---|

Date/Time Printed: 03-10-2021 12:43:25

SCV026\ 08/2018

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 21-00125 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| PLAINTIFF(S):   Egan, Flanagan and Cohen, P.C. | COUNTY |
|---|---|
| ADDRESS:   67 Market Street, P.O. Box 9035 | HAMPDEN |
| Springfield, MA 01102-9035 | DEFENDANT(S):   The Hartford d/b/a Twin City Fire Insurance Company |
| | and Chase, Clarke, Stewart & Fontana |
| ATTORNEY:   John J. Egan, Esq. and Michael G. McDonough, Esq. | |
| ADDRESS:   Egan, Flanagan and Cohen, P.C. | ADDRESS: |
| 67 Market Street, P.O. Box 9035 | |
| Springfield, MA 01102-9035 | |
| BBO:   Egan's BBO #151680; McDonough's BBO #682128 | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| D13 | Declaratory Judgment | A | ☑ YES   ☐ NO |

*If "Other" please describe:

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses .......................................................................................... $ _____
2. Total doctor expenses .......................................................................................... $ _____
3. Total chiropractic expenses .......................................................................................... $ _____
4. Total physical therapy expenses .......................................................................................... $ _____
5. Total other expenses (describe below) .......................................................................................... $ _____
                                                                    Subtotal (A): $ _____
B. Documented lost wages and compensation to date .......................................................................................... $ _____
C. Documented property damages to dated .......................................................................................... $ _____
D. Reasonably anticipated future medical and hospital expenses .......................................................................................... $ _____
E. Reasonably anticipated lost wages .......................................................................................... $ _____
F. Other documented items of damages (describe below) .......................................................................................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                                    TOTAL (A-F): $ _____

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

Failure to provide defense and indemnification under an insurance policy; cost of defense and as yet undetermined amount of indemnity.

TOTAL: $   100,000+

Signature of Attorney/Pro Se Plaintiff: X _____   Date: 3/9/21

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____   Date: 3/9/21

## CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality ***

AA1 Contract Action involving Commonwealth,
   Municipality, MBTA, etc.                          (A)
AB1 Tortious Action involving Commonwealth,
   Municipality, MBTA, etc.                          (A)
AC1 Real Property Action involving
   Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving
   Municipality, Commonwealth, etc.          (A)
AE1 Administrative Action involving
   Commonwealth, Municipality, MBTA,etc. (A)

**CN Contract/Business Cases**

A01 Services, Labor, and Materials                (F)
A02 Goods Sold and Delivered                      (F)
A03 Commercial Paper                              (F)
A04 Employment Contract                           (F)
A06 Insurance Contract                            (F)
A08 Sale or Lease of Real Estate                  (F)
A12 Construction Dispute                          (A)
A14 Interpleader                                  (F)
BA1 Governance, Conduct, Internal
   Affairs of Entities                            (A)
BA3 Liability of Shareholders, Directors,
   Officers, Partners, etc.                       (A)
BB1 Shareholder Derivative                        (A)
BB2 Securities Transactions                       (A)
BC1 Mergers, Consolidations, Sales of
   Assets, Issuance of Debt, Equity, etc.  (A)
BD1 Intellectual Property                         (A)
BD2 Proprietary Information or Trade
   Secrets                                        (A)
BG1 Financial Institutions/Funds                  (A)
BH1 Violation of Antitrust or Trade
   Regulation Laws                                (A)
A99 Other Contract/Business Action - Specify (F)

* Choose this case type if ANY party is the
Commonwealth, a municipality, the MBTA, or any
other governmental entity UNLESS your case is a
case type listed under Administrative Civil Actions
(AA).

† Choose this case type if ANY party is an
incarcerated party, UNLESS your case is a case
type listed under Administrative Civil Actions (AA)
or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

D01 Specific Performance of a Contract       (A)
D02 Reach and Apply                          (F)
D03 Injunction                               (F)
D04 Reform/ Cancel Instrument                (F)
D05 Equitable Replevin                       (F)
D06 Contribution or Indemnification          (F)
D07 Imposition of a Trust                    (A)
D08 Minority Shareholder's Suit              (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting                               (A)
D11 Enforcement of Restrictive Covenant      (F)
D12 Dissolution of a Partnership             (F)
D13 Declaratory Judgment, G.L. c.231A        (A)
D14 Dissolution of a Corporation             (F)
D99 Other Equity Action                      (F)

**PA Civil Actions Involving Incarcerated Party †**

PA1 Contract Action involving an
   Incarcerated Party                        (A)
PB1 Tortious Action involving an
   Incarcerated Party                        (A)
PC1 Real Property Action involving an
   Incarcerated Party                        (F)
PD1 Equity Action involving an
   Incarcerated Party                        (F)
PE1 Administrative Action involving an
   Incarcerated Party                        (F)

**TR Torts**

B03 Motor Vehicle Negligence - Personal
   Injury/Property Damage                    (F)
B04 Other Negligence - Personal
   Injury/Property  Damage                   (F)
B05 Products Liability                       (A)
B06 Malpractice - Medical / Wrongful Death   (A)
B07 Malpractice - Other                      (A)
B08 Wrongful Death, G.L. c.229 §2A           (A)
B15 Defamation                               (A)
B19 Asbestos                                 (A)
B20 Personal Injury - Slip & Fall            (F)
B21 Environmental                            (F)
B22 Employment Discrimination                (F)
BE1 Fraud, Business Torts, etc.              (A)
B99 Other Tortious Action                    (F)

**RP Real Property**

C01 Land Taking                              (F)
C02 Zoning Appeal, G.L. c. 40A               (F)
C03 Dispute Concerning Title                 (F)
C04 Foreclosure of a Mortgage                (X)
C05 Condominium Lien & Charges               (X)
C99 Other Real Property Action               (F)

**MC Miscellaneous Civil Actions**

E18 Foreign Discovery Proceeding             (X)
E97 Prisoner Habeas Corpus                   (X)
E22 Lottery Assignment, G.L. c. 10 §28       (X)

**AB Abuse/Harassment Prevention**

E15 Abuse Prevention Petition, G.L. c. 209A  (X)
E21 Protection from Harassment, G.L. c. 258E (X)

**AA Administrative Civil Actions**

E02 Appeal from Administrative Agency,
   G.L. c. 30A                               (X)
E03 Certiorari Action, G.L. c.249 §4         (X)
E05 Confirmation of Arbitration Awards       (X)
E06 Mass Antitrust Act, G. L. c. 93 §9       (A)
E07 Mass Antitrust Act, G. L. c. 93 §8       (X)
E08 Appointment of a Receiver                (X)
E09 Construction Surety Bond, G.L. c. 149
   §§29, 29A                                 (A)
E10 Summary Process Appeal                   (X)
E11 Worker's Compensation                    (X)
E16 Auto Surcharge Appeal                    (X)
E17 Civil Rights Act, G.L. c.12 §11H         (A)
E24 Appeal from District Court
   Commitment, G.L. c.123 §9(b)              (X)
E25 Pleural Registry (Asbestos cases)
E94 Forfeiture, G.L. c265 §56                (X)
E95 Forfeiture, G.L. c.94C §47               (F)
E99 Other Administrative Action              (X)
Z01 Medical Malpractice - Tribunal only,
   G.L. c. 231 §60B                          (F)
Z02 Appeal Bond Denial                       (X)

**SO Sex Offender Review**

E12 SDP Commitment, G.L. c. 123A §12         (X)
E14 SDP Petition, G.L. c. 123A §9(b)         (X)

**RC Restricted Civil Actions**

E19 Sex Offender Registry, G.L. c.6 §178M    (X)
E27 Minor Seeking Consent, G.L. c.112 §12S (X)

TRANSFER YOUR SELECTION TO THE FACE SHEET

EXAMPLE:

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | _F_ | ☒ YES    ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or pro se party.

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT

HAMPDEN, SS.

SUPERIOR COURT

EGAN, FLANAGAN AND COHEN, P.C.,
PLAINTIFF

vs.

CIVIL ACTION No. 21-00125

THE HARTFORD D/B/A TWIN CITY FIRE
INSURANCE COMPANY AND
CHASE, CLARKE, STEWART & FONTANA,
DEFENDANTS

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.  This Complaint seeks a determination of the coverages, obligations, and duties of the defendant and its constituent entities under a "Commercial General Liability Policy" (hereinafter the "Policy") issued by the defendant (hereinafter "The Hartford" or the "defendant") through Twin City Fire Insurance Company and numbered 08 SBA AA1751 with effective dates of October 17, 2019 through October 17, 2020.

2.  The plaintiff submitted a claim under said Policy for a defense and indemnification as a result of an arbitration claim asserted by its former employee and shareholder Joseph A. Pacella, presently of Saco, Maine.

### THE PARTIES

3.  The plaintiff, Egan, Flanagan and Cohen, P.C., at all times pertinent hereto was and is located at 67 Market Street in Springfield, Hampden County, Massachusetts (hereinafter the "plaintiff").

4. The defendant, The Hartford d/b/a Twin City Fire Insurance Company, is an insurance company with a principal place of business at 100 High Street, Boston, Massachusetts, which sells and administers, *inter alia*, comprehensive general liability policies throughout the Commonwealth of Massachusetts directly, through constituent entities, and other agents (hereinafter "The Hartford" or the "defendant").

5. The defendant, Chase, Clarke, Stewart & Fontana, is an agent of the defendant, The Hartford, with a principal office located at 101 State Street, Springfield, Massachusetts.

<u>FACTS</u>

6. In this matter, the defendant, The Hartford, sold to the plaintiff, through its agent and codefendant, Chase Clark & Stewart, located at 101 State Street, Springfield, Hampden County, Massachusetts, the Policy upon which these claims are based.

7. The Policy upon which this action is based carries Policy Number 08 SBA AA1751 with effective dates of October 17, 2019 through October 17, 2020. The Policy provides Primary Coverage limits and Employee Benefits Liability limits of $1,000,000 per occurrence with an aggregate limit of $2,000,000. The pertinent Policy forms issued by the defendant are its Business Liability Coverage Form (SS0080405); its Business Liability Coverage Form Amendatory Endorsement (SS00600915); and its Employee Benefits Liability Occurrence (SS40501008). See **Exhibit A** attached hereto and made a part hereof.

8. On February 18, 2020, Joseph A. Pacella (hereinafter "Pacella") notified his partners in the plaintiff that he was retiring as of March 31, 2020. In his retirement letter, Pacella set forth a series of requests for benefits he claimed he was entitled to and proposed a series

2

of conditions under which he would continue to be associated with the firm post-retirement.

9. At the time of Pacella's notice to the plaintiff, it was concluding a deferred compensation agreement with one previously retired partner and had already agreed to a deferred compensation agreement with another partner whose notice of retirement was received before Pacella's and to whom the plaintiff had committed deferred compensation for its fiscal year 2021 (April 1, 2020 to March 31, 2021).

10. Pacella had provided no prior notification that he intended to retire.

11. During the month of March 2020, the plaintiff was preparing to close out its fiscal year and the COVID-19 virus began to significantly impact the Commonwealth of Massachusetts, its court system, and consequently the revenues of the plaintiff.

12. The plaintiff's revenues are, to a large degree, the consequence of its litigation practice.

13. In order to ensure it would not be required to lay off any employees, the partners in the plaintiff in April 2020 took substantial pay deferrals and initiated other cost-saving measures.

14. By virtue of its pay deferrals and other cost-saving measures, the plaintiff was able to maintain full employment even though its offices were closed from March 16, 2020 to June 1, 2020, and employees were offered remote working opportunities.

15. The plaintiff responded to Pacella's retirement letter by accepting his retirement, paying him on schedule his contributed capital, offering him his whole life insurance policies in exchange for its cash surrender value, and the agreed-to price for his shares.

16. Pacella has accepted the payment for his shares, his capital repayment, and declined to purchase his life insurance policies.

3

17. The plaintiff informed Pacella that, for a variety of reasons, it could not agree to other future terms he sought in his retirement letter.

18. Pacella declined the plaintiff's suggestion that, due to the economic times and the fact that it had already obligated itself to one year of deferred compensation to a prior retiring partner, it defer any decision on his deferred compensation for a year.

19. Pacella insisted the firm decide his deferred compensation in April of 2020 but agreed to defer payment to April 2021 if the firm would immediately pay him the cash surrender value of his life insurance.

20. The plaintiff declined to set the deferred compensation in April 2020 in large part because the "financial condition" of the plaintiff, which was an enumerated factor in the agreement's language under deferred compensation, would not be known until April 2021 and the plaintiff could not commit to any amount of deferred compensation until it had all the facts necessary to make a responsible decision.

21. Pacella was at all times pertinent to this matter an employee of the plaintiff and a shareholder in plaintiff.

22. Pacella sought deferred compensation in the amount of $210,000.

23. On June 10, 2020, Pacella filed a demand for arbitration with the American Arbitration Association.

24. Plaintiff, on September 4, 2020, noticed the defendant, Chase, Clarke, Stewart & Fontana, requesting a defense and indemnification under the Policy referenced above. See **Exhibit B** which is attached hereto, incorporated herein, and made a part hereof.

4

25. Thereafter, on October 6, 2020, the defendant denied coverage for either a defense or indemnification to plaintiff.  See **Exhibit C** which is attached hereto, incorporated herein, and made a part hereof.

26. Thereafter, on October 7, 2020, the plaintiff requested clarification and/or reconsideration as the defendant's October 6, 2020 letter provided no analysis or support for the denial of a defense and/or a faulty analysis for the denial of indemnification.  See **Exhibit D** which is attached hereto, incorporated herein, and made a part hereof.

27. On November 23, 2020, the defendant responded with a second denial of both a defense and an indemnification.  See **Exhibit E** which is attached hereto, incorporated herein, and made a part hereof.

28. As a result of the defendant's failure to provide a defense, to date the plaintiff has incurred in costs and legal fees an amount in excess of $50,000 with additional future significant expenses expected.

THE CAUSES OF ACTION

COUNT I

BREACH OF CONTRACT

29. The plaintiff restates the facts set forth above in paragraphs 1 through 28.

30. The plaintiff claims the conduct engaged in by the defendant above is in violation of its duty to defend and indemnify the plaintiff as set forth in the insurance Policy referenced above.

31. As a result of defendant's breach, the plaintiff has suffered significant financial loss.

COUNT II

BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

5

32. The plaintiff restates the facts set forth above in paragraphs 1 through 31.

33. The plaintiff claims the conduct engaged in by the defendant above is in violation of its duty of good faith and fair dealing under the terms of the insurance Policy referenced above.

34. As a result of defendant's breach, the plaintiff has suffered significant financial loss.

<u>COUNT III</u>

<u>DECLARATORY JUDGMENT</u>

35. The plaintiff restates the facts set forth above in paragraphs 1 through 34.

36. Plaintiff and defendant disagree as to plaintiff's rights and defendant's duties under the terms of the insurance Policy referenced above.

37. Plaintiff requests this Honorable Court define the duties owed by the defendant under said insurance Policy in this matter.

<u>COUNT IV</u>

<u>G.L. c. 93A; G.L. c. 176D</u>

38. The plaintiff restates the facts set forth above in paragraphs 1 through 37.

39. Plaintiff and defendant are engaged in trade and commerce in this Commonwealth.

40. Plaintiff alleges that the conduct outlined above is a violation of G.L. c. 176D, §3(9)(e) and G.L. c. 176D, §3(9)(n) and other unlawful and recognized unfair claim practices.

41. Unfair claim practices under G.L. c. 176D are a violation of the defendant's obligations under G.L. c. 93A and therefore permit the award of attorneys' fees, costs, and up to three times the damages occasioned thereby.

42. As a result of defendant's misconduct in violation of the General Laws cited above, the plaintiff has suffered a significant financial loss.

6

## REMEDY

43. For all of the facts set forth above, the plaintiff requests this Honorable Court:

    a. Define under G.L. c. 231A the parties' rights and duties under the above-referenced insurance Policy.

    b. Assess, determine, and award the financial damages suffered by the plaintiff as a result of any breaches or violation of any statutes or regulations cited herein.

    c. Assess, determine, and award all interest, costs, attorneys' fees, and multiple damages the plaintiff is entitled to because of the defendant's wrongful conduct set forth herein.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

THE PLAINTIFF,
EGAN, FLANAGAN AND COHEN, P.C.,
By Its Attorneys

John J. Egan, BBO #151680
Michael G. McDonough, BBO #682128
Egan, Flanagan and Cohen, P.C.
67 Market Street, P.O. Box 9035
Springfield, MA 01102-9035
(413) 737-0260; Fax (413) 737-0121
Email: jje@efclaw.com; mgm@efclaw.com

Dated:  March 9, 2021

0623-210264\412837

7

EXHIBIT A

51
17
AA
SBA

This **Spectrum Policy** consists of the Declarations, Coverage Forms, Common Policy Conditions and any other Forms and Endorsements issued to be a part of the Policy. This insurance is provided by the stock insurance company of The Hartford Insurance Group shown below.

**INSURER:**   TWIN CITY FIRE INSURANCE COMPANY
ONE HARTFORD PLAZA, HARTFORD, CT 06155

COMPANY CODE: 7

**Policy Number:**   08 SBA AA1751  SB

# SPECTRUM POLICY DECLARATIONS          ORIGINAL

**Named Insured and Mailing Address:**          EGAN, FLANAGAN & COHEN, PC
(No., Street, Town, State, Zip Code)          67 MARKET STREET LLC
67 MARKET ST
SPRINGFIELD          MA   01103

**Policy Period:**          **From**   10/17/19   **To**   10/17/20   1   YEAR
12:01 a.m., Standard time at your mailing address shown above. **Exception:** 12 noon in New Hampshire.

**Name of Agent/Broker:**  CHASE CLARKE STEWART & FONTANA INC
**Code:**   087870

**Previous Policy Number:**  08 SBA AA1751

**Named Insured is:** CORPORATION

**Audit Period:** NON-AUDITABLE

**Type of Property Coverage:** SPECIAL

**Insurance Provided:** In return for the payment of the  premium and  subject to  all of the  terms of this  policy, we agree with you to provide insurance as stated in this policy.

**TOTAL ANNUAL PREMIUM IS:**          $6,352

Countersigned by          *Susan L. Castaneda*          08/07/19
Authorized Representative          Date

## SPECTRUM POLICY DECLARATIONS (Continued)
**POLICY NUMBER:** 08 SBA AA1751

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:** 001       **Building:** 001

67 MARKET ST
SPRINGFIELD        MA 01103

**Description of Business:**
Lawyers & Law Firms

**Deductible:** $ 2,500 PER OCCURRENCE

**BUILDING AND BUSINESS PERSONAL PROPERTY   LIMITS OF INSURANCE**

**BUILDING**

   REPLACEMENT COST                           $ 3,641,500

**BUSINESS PERSONAL PROPERTY**

   REPLACEMENT COST                           $   757,400

**PERSONAL PROPERTY OF OTHERS**

   REPLACEMENT COST                           NO COVERAGE

MONEY AND SECURITIES

   INSIDE THE PREMISES                        $   10,000
   OUTSIDE THE PREMISES                       $    5,000

MORTGAGE HOLDER:   APPLIES

Page 002 (CONTINUED ON NEXT PAGE)
Policy Expiration Date: 10/17/20

Form SS 00 02 12 06
Process Date: 08/07/19

# SPECTRUM POLICY DECLARATIONS (Continued)
**POLICY NUMBER:** 08 SBA AA1751

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:** 001     **Building:** 001

## PROPERTY OPTIONAL COVERAGES APPLICABLE   LIMITS OF INSURANCE
## TO THIS LOCATION

ORDINANCE OR LAW COVERAGE:
FORM SS 04 15

UNDAMAGED PART COVERAGE
DEMOLITION COST COVERAGE            $   100,000
INCREASED COST COVERAGE            $   250,000

SUPER STRETCH FOR LAW OFFICES
FORM SS 04 94
THIS FORM INCLUDES MANY ADDITIONAL
COVERAGES AND EXTENSIONS OF
COVERAGES. A SUMMARY OF THE
COVERAGE LIMITS IS ATTACHED.

LIMITED FUNGI, BACTERIA OR VIRUS      $   50,000
COVERAGE:
FORM SS 40 93
THIS IS THE MAXIMUM AMOUNT OF
INSURANCE FOR THIS COVERAGE,
SUBJECT TO ALL PROPERTY LIMITS
FOUND ELSEWHERE ON THIS
DECLARATION.
INCLUDING BUSINESS INCOME AND EXTRA       30 DAYS
EXPENSE COVERAGE FOR:

Form SS 00 02 12 06
Process Date: 08/07/19

## SPECTRUM POLICY DECLARATIONS (Continued)
**POLICY NUMBER:** 08 SBA AA1751

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:** 002    **Building:** 001

BENNETT ROAD / TWIN MOUNTAIN ROAD
HAMPDEN         MA 01036

**Description of Business:**
Vacant Land

**Deductible:** NO COVERAGE

**BUILDING AND BUSINESS PERSONAL PROPERTY    LIMITS OF INSURANCE**

**BUILDING**

NO COVERAGE

**BUSINESS PERSONAL PROPERTY**

**REPLACEMENT COST**                           NO COVERAGE

**PERSONAL PROPERTY OF OTHERS**

**REPLACEMENT COST**                           NO COVERAGE

MONEY AND SECURITIES

INSIDE THE PREMISES                            NO COVERAGE
OUTSIDE THE PREMISES                           NO COVERAGE

# SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 08 SBA AA1751

PROPERTY OPTIONAL COVERAGES APPLICABLE   LIMITS OF INSURANCE
        TO ALL LOCATIONS

BUSINESS INCOME AND EXTRA EXPENSE                12 MONTHS ACTUAL LOSS SUSTAINED
COVERAGE
COVERAGE INCLUDES THE FOLLOWING
COVERAGE EXTENSIONS:

ACTION OF CIVIL AUTHORITY:                       30 DAYS
EXTENDED BUSINESS INCOME:                        30 CONSECUTIVE DAYS

EQUIPMENT BREAKDOWN COVERAGE
   COVERAGE FOR DIRECT PHYSICAL LOSS
   DUE TO:
      MECHANICAL BREAKDOWN,
      ARTIFICIALLY GENERATED CURRENT
      AND STEAM EXPLOSION

THIS ADDITIONAL COVERAGE INCLUDES
THE FOLLOWING EXTENSIONS                          $    50,000
      HAZARDOUS SUBSTANCES                         $    50,000
      EXPEDITING EXPENSES

MECHANICAL BREAKDOWN COVERAGE ONLY
APPLIES WHEN BUILDING OR BUSINESS
PERSONAL PROPERTY IS SELECTED ON
THE POLICY

IDENTITY RECOVERY COVERAGE                         $    15,000
FORM SS 41 12

EMPLOYEE DISHONESTY COVERAGE -                     $   500,000
EXCLUDES ERISA
FORM: SS 42 01
DEDUCTIBLE: $  1,000

Form SS 00 02 12 06                    Page 005  (CONTINUED ON NEXT PAGE)
Process Date:08/07/19                     Policy Expiration Date: 10/17/20

## SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 08 SBA AA1751

| | LIMITS OF INSURANCE |
|---|---|
| **BUSINESS LIABILITY** | |
| LIABILITY AND MEDICAL EXPENSES | $1,000,000 |
| MEDICAL EXPENSES - ANY ONE PERSON | $   10,000 |
| PERSONAL AND ADVERTISING INJURY | $1,000,000 |
| DAMAGES TO PREMISES RENTED TO YOU ANY ONE PREMISES | $1,000,000 |
| AGGREGATE LIMITS PRODUCTS-COMPLETED OPERATIONS | $2,000,000 |
| GENERAL AGGREGATE | $2,000,000 |

AMENDMENT OF LIQUOR LIABILITY
EXCLUSION: FORM SS 40 34
DESCRIPTION OF ACTIVITY:
NONE

BUSINESS LIABILITY OPTIONAL
COVERAGES

HIRED/NON-OWNED AUTO LIABILITY                    $1,000,000

Form SS 00 02 12 06
Process Date: 08/07/19

**SPECTRUM POLICY DECLARATIONS (Continued)**
POLICY NUMBER: 08 SBA AA1751

BUSINESS LIABILITY OPTIONAL COVERAGES     LIMITS OF INSURANCE
   (Continued)

EMPLOYEE BENEFITS LIABILITY
COVERAGE: FORM SS 40 50                  $1,000,000
   EACH CLAIM                        $2,000,000
   AGGREGATE

UNMANNED AIRCRAFT LIABILITY
FORM: SS 42 06

00020

*1100208AA17510120

Form SS 00 02 12 06
Process Date: 08/07/19

**SPECTRUM POLICY DECLARATIONS (Continued)**
POLICY NUMBER: 08 SBA AA1751

ADDITIONAL INSUREDS: THE FOLLOWING ARE ADDITIONAL INSUREDS FOR BUSINESS LIABILITY COVERAGE IN THIS POLICY.

LOCATION   001 BUILDING   001
   TYPE    OWNER, LESSEES OR CONTRACTORS
   NAME    SEE FORM IH 12 00

**SPECTRUM POLICY DECLARATIONS (Continued)**
POLICY NUMBER: 08 SBA AA1751

LOSS PAYEE:  FORM SS 12 12
SEE FORM IH 12 00

MORTGAGE HOLDER  :                    MONSON SAVINGS BANK
                                      ISAOA / ATIMA
                                      146 MAIN STREET
                                      MONSON, MA. 01057

00021

*1100208AA1751012O

**Form Numbers of Forms and Endorsements that apply:**

```
SS 00 01 03 14      SS 00 05 10 08      SS 00 07 07 05      SS 00 08 04 05
SS 00 60 09 15      SS 00 61 07 19      SS 00 64 09 16      SS 84 20 09 07
SS 01 01 07 08      SS 42 06 03 17      SS 04 15 07 05      SS 04 19 04 09
SS 04 22 07 05      SS 04 30 07 05      SS 04 38 09 09      SS 04 45 07 05
SS 04 41 03 18      SS 04 42 03 17      SS 04 44 07 05      SS 04 80 03 00
SS 04 46 09 14      SS 04 47 04 09      SS 04 78 12 17      SS 40 34 03 00
SS 04 86 03 00      SS 04 94 09 07      SS 40 18 07 05      SS 41 51 10 09
SS 40 50 10 08      SS 40 93 07 05      SS 41 12 12 17      SS 05 52 06 13
SS 41 63 06 11      SS 42 01 03 17      SS 05 47 09 15      SS 12 12 03 92
SS 50 38 10 03      SS 51 11 03 17      SS 06 48 01 94      SS 83 76 01 15
SS 50 19 01 15      IH 99 40 04 09      IH 99 41 04 09
SS 89 93 07 16
   IH 12 00 11 85 LOSS PAYEE
   IH 12 00 11 85 ADDITIONAL INSURED - OWNER, LESSEES OR CONTRACTOR
```

Page 009

Form SS 00 02 12 06                         Policy Expiration Date: 10/17/20
Process Date: 08/07/19



# SUPER STRETCH FOR LAW OFFICES SUMMARY

### SUMMARY OF COVERAGE LIMITS

This is a summary of the Coverages and the Limits of Insurance provided by the Super Stretch Coverage form SS 04 94 which is included in this policy. No coverage is provided by this summary. Refer to coverage form SS 04 94 to determine the scope of your insurance protection.

The Limits of Insurance for the following Additional Coverages are in addition to any other limit of insurance provided under this policy:

**Blanket Coverage Limit of Insurance: $250,000**
**Blanket Coverages**
Accounts Receivable – On/Off Premises
Computers and Media
Debris Removal
Personal Property of Others
Temperature Change
Valuable Papers and Records- On/Off Premises

| Coverage | Limit |
|---|---|
| Brands and Labels | Up to Business Personal Property Limit |
| Claim Expenses | $ 10,000 |
| Computer Fraud | $ 5,000 |
| Employee Dishonesty (including ERISA) | $ 25,000 |
| Fine Arts | $ 25,000 |
| Forgery | $ 25,000 |
| Laptop Computers – Worldwide Coverage | $ 10,000 |
| Law Library Coverage | $ 25,000 |
| Off-Premises Utility Services – Direct Damage | $ 25,000 |
| Outdoor Signs | Full Value |
| Pairs or Sets | Up to Business Personal Property Limit |
| Property at Other Premises | $ 10,000 |
| Salespersons' Samples | $ 5,000 |
| Sewer and Drain Back Up | Included up to Covered Property Limits |
| Sump Overflow or Sump Pump Failure | $50,000 |
| Tenant Building and Business Personal Property Coverage-Required By Lease | $ 20,000 |
| Transit Property in the Care of Carriers for Hire | $ 10,000 |
| Unauthorized Business Card Use | $ 5,000 |

The Limits of Insurance for the following Coverage Extensions are a replacement of the Limit of Insurance provided under the Standard Property Coverage Form or the Special Property Coverage Form, whichever applies to the policy:

| Coverage | Limit |
|---|---|
| Newly Acquired or Constructed Property – 180 Days | |
| Building | $1,000,000 |
| Business Personal Property | $ 500,000 |
| Business Income and Extra Expense | $ 500,000 |
| Outdoor Property | $ 25,000 aggregate/ $1,000 per item |
| Personal Effects | $ 25,000 |
| Property Off-Premises | $ 25,000 |

The following changes apply only if Business Income and Extra Expense are covered under this policy.  The Limits of Insurance for the following Business Income and Extra Expense Coverages are in addition to any other Limit of Insurance provided under this policy:

| Coverage | Limit |
|---|---|
| Business Income Extension for Off-Premises Utility Services | $ 25,000 |
| Business Income Extension for Web Sites | $ 50,000/7 days |
| Business Income from Dependent Properties | $ 50,000 |

The following Limit of Insurance for the following Business Income Coverage is a replacement of the Limit of Insurance provided under the Standard Property Coverage Form or the Special Property Coverage Form, whichever applies to the policy:

| Coverage | Limit |
|---|---|
| Extended Business Income | 90 Days |

The following changes apply to Loss Payment Conditions:

| Coverage | Limit |
|---|---|
| Valuation Changes | |
| Commodity Stock | Included |
| "Finished Stock" | Included |
| Mercantile Stock - Sold | Included |

**Form SS 84 20 09 07**

00023

*1100208AA17510120

# COMMON POLICY CONDITIONS

# QUICK REFERENCE - SPECTRUM POLICY

## DECLARATIONS
and
## COMMON POLICY CONDITIONS

**I. DECLARATIONS**

Named Insured and Mailing Address
Policy Period
Description and Business Location
Coverages and Limits of Insurance

**II. COMMON POLICY CONDITIONS**

| | Beginning on Page |
|---|---|
| | 1 |
| A. Cancellation | 1 |
| B. Changes | 2 |
| C. Concealment, Misrepresentation Or Fraud | 2 |
| D. Examination Of Your Books And Records | 2 |
| E. Inspections And Surveys | 2 |
| F. Insurance Under Two Or More Coverages | 2 |
| G. Liberalization | 2 |
| H. Other Insurance - Property Coverage | 2 |
| I. Premiums | 2 |
| J. Transfer Of Rights Of Recovery Against Others To Us | 3 |
| K. Transfer Of Your Rights And Duties Under This Policy | 3 |
| L. Premium Audit | |

Form SS 00 05 10 08



# COMMON POLICY CONDITIONS

All coverages of this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

         Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a Covered Cause of Loss, permanent repairs to the building:

         (a) Have not started; and

         (b) Have not been contracted for,

         within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. Such refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**Page 1 of 3**

Form SS 00 05 10 08                              © 2008, The Hartford

(Includes copyrighted material of Insurance Services Office, Inc. with its permission)

## COMMON POLICY CONDITIONS

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to the policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

1. We have the right but are not obligated to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.

2. Any inspections, surveys, reports or recommendations will relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of any person. We do not represent or warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.

3. This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to, or at any time during, the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance - Property Coverage**

If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**I. Premiums**

1. The first Named Insured shown in the Declarations:
   a. Is responsible for the payment of all premiums; and
   b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. If applicable, on each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:
   a. Paid to us prior to the anniversary date; and
   b. Determined in accordance with Paragraph 2. above.

   Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Changes in exposures or changes in your business operation, acquisition or use of locations that are not shown in the Declarations may occur during the policy period. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Transfer Of Rights Of Recovery Against Others To Us**

Applicable to Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property; or
2. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

Form SS 00 05 10 08

COMMON POLICY CONDITIONS

a. Someone insured by this insurance;

b. A business firm:

(1) Owned or controlled by you; or

(2) That owns or controls you; or

c. Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**K. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is

appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**L. Premium Audit**

a. We will compute all premiums for this policy in accordance with our rules and rates.

b. The premium amount shown in the Declarations is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Any additional premium found to be due as a result of the audit are due and payable on notice to the first Named Insured. If the deposit premium paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must maintain all records related to the coverage provided by this policy and necessary to finalize the premium audit, and send us copies of the same upon our request.

Our President and Secretary have signed this policy. Where required by law, the Declarations page has also been countersigned by our duly authorized representative.

Lisa Levin, Secretary

Douglas Elliot, President

Form SS 00 05 10 08



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PROPERTY COVERAGE
# AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**



A. The following changes are made to Paragraph **A.5., Additional Coverages:**

1. Paragraph **f., Forgery** is deleted and replaced with the following:

   **f. Forgery**

   (1) We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, or bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent. This includes written instruments required in conjunction with any credit, debit, or charge card issued to you or any employee for business purposes.

   (2) If you are sued for refusing to pay the check, draft, promissory note, or bill of exchange or similar written promise of payment in "money" on the basis that it has been forged or altered, and you have our written consent to defend against the "suit", we will pay for any reasonable expenses that you incur and pay in that defense.

   (3) We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

      (a) Money orders, including counterfeit money orders, issued by any post office, express company or bank that are not paid upon presentation; and

      (b) Counterfeit United States or Canadian paper currency.

   (4) For the purpose of this Coverage Extension, check includes a substitute check as defined in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

   (5) We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

   (6) The most we will pay in any one occurrence, including legal expenses, under this Additional Coverage is $5,000, unless a higher Limit of Insurance is shown in the Declarations.

2. Paragraph **i.(2)(c)** of the **Money and Securities** Additional Coverage is deleted and replaced with the following:

      (c) Loss or damage to "money" and "securities" following and directly related to the use of any "computer" to fraudulently cause a transfer of that property.

B. The following changes are made to Section **B., EXCLUSIONS**

1. Paragraph **1.a., Earth Movement** is amended to add the following:

   This Exclusion applies regardless of whether any of the following is caused by weather, an act of nature, by an artificial, man-made or other cause.

2. The following is exclusion is added to Paragraph **1.:**

   **Electronic Vandalism or Corruption of "Electronic Data" or Corruption of "Computer Equipment"**

**Page 1 of 3**

This exclusion does not apply to Electronic Vandalism, form SS 14 29 or Electronic Vandalism, form SS 40 08 if either form has been made part of this policy.

(1) Destruction or corruption of "electronic data" caused by a virus, malicious code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

(2) Unauthorized viewing, copying or use of electronic data (or any proprietary or confidential information or intellectual property in any form) by any person, even if such activity is characterized as "theft";

(3) Errors or omissions in programming or processing "electronic data";

(4) Errors or deficiency in design, installation, maintenance, repair or modification of your computer system or any computer system or network to which your system is connected or on which your system depends (including "electronic data");

(5) Manipulation of your computer system, including "electronic data", by an employee, volunteer worker or contractor, for the purpose of diverting or destroying "electronic data" or causing fraudulent or illegal transfer of any property;

(6) Interruption in normal computer function or network service or function due to insufficient capacity to process transactions or to an overload of activity on the system or network;

(7) Unexplained or indeterminable failure, malfunction or slowdown of a computer system, including "electronic data" and the inability to access or properly manipulate the "electronic data";

(8) Complete or substantial failure, disablement or shutdown of the Internet, regardless of the cause;

(9) The inability of a computer system to correctly recognize, process, distinguish, interpret or accept one or more dates or times.

But if direct physical loss or direct physical damage occurs to Covered Property from a resulting Covered Cause of Loss, we will pay for that resulting direct physical loss or direct physical damage. Mere loss of use or loss of functionality of any property is not considered physical loss or physical damage.

3. Paragraph **2.** is deleted and replaced with the following:

We will not pay for loss or damage caused by or resulting from:

a. **Consequential Losses:** Delay, loss of use or loss of market.

b. **Smoke, Vapor, Gas:** Smoke, vapor or gas from agricultural smudging or industrial operations.

c. **Miscellaneous Types of Loss:**

(1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, mold, spore or other animals;

(6) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if physical loss or physical damage by the "specified causes of loss", building glass breakage or Equipment Breakdown Accident results, we will pay for that resulting physical loss or physical damage.

d. **Frozen Plumbing:** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

e. **Dishonesty:** Dishonest or criminal act by you, any of your partners, "members", officers, "managers", employees,

**Form SS 00 61 07 19**

directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

f. **False Pretense:** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

g. **Exposed Property:** Rain, snow, ice or sleet to personal property in the open, except as provided in the Coverage Extension for Outdoor Property.

h. **Collapse:** Collapse, except as provided in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the "scheduled premises", we will pay for that resulting loss or damage.

i. **Pollution:** We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants and contaminants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if physical loss or physical damage by the "specified causes of loss" results, we will pay for the resulting physical loss or physical damage caused by the "specified cause of loss."

C. Definition **4.**, "Data", of Section **G., PROPERTY DEFINITIONS** is deleted and replaced with the following.

4. "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

"Electronic data" it is not considered physical property under this Coverage Part and is covered only as expressly provided for in this Coverage Part. Any such coverage does not indicate that "electronic data" is considered to be tangible property subject to physical loss or physical damage for purposes of any business interruption coverage or other coverage that requires physical loss or physical damage.

Form SS 00 61 07 19

POLICY NUMBER: 08 SBA AA1751



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UNMANNED AIRCRAFT - LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

### BUSINESS LIABILITY COVERAGE FORM

### SCHEDULE

| |
| --- |
| ☐ **Option 1**: If an "X" is shown in this box, Bodily Injury and Property Damage coverage for Unmanned Aircraft applies and the Unmanned Aircraft Exclusion in Paragraph **A.1.g.(1)** of this endorsement does not apply. |
| ☐ **Option 2**: If an "X" is shown in this box, Personal And Advertising Injury coverage for Unmanned Aircraft applies and the Unmanned Aircraft - Personal And Advertising Injury Exclusion in Paragraph **A.2.** of this endorsement does not apply. |

Except as otherwise stated in this endorsement or the schedule above, the terms and conditions of the policy apply to the insurance stated below.

**A.** The following changes are made to Section **B.1.**, **EXCLUSIONS**:

1. Paragraph **g.**, **Aircraft, Auto or Watercraft**, is deleted and replaced with the following:

   **g. Aircraft, Auto or Watercraft**

   **(1) Unmanned Aircraft**

   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

   This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

   **(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft

owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

Paragraph **g. (2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

   **(i)** Less than 51 feet long; and

   **(ii)** Not being used to carry persons for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft;

**Policy Expiration Date:** 10/17/20

**Form SS 42 06 03 17**
**Process Date:** 08/07/19

(e) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Section G Liability and Medical Expenses Definitions, Paragraph 15 f. (2) or f. (3) of the definition of "mobile equipment"; or

(f) An aircraft (other than unmanned aircraft) that is not owned by any insured and is hired, chartered or loaned with a paid crew. However, this exception does not apply if the insured has any other insurance for such "bodily injury" or "property damage", whether the other insurance is primary, excess, contingent or on any other basis.

2. The following is added to Section B. EXCLUSIONS Paragraph p., Personal and Advertising Injury:

Unmanned Aircraft – Personal and Advertising Injury

Arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

However, this exclusion does not apply if the only allegation in the claim or "suit" involves an intellectual property right which is limited to:

(a) Infringement, in your "advertisement", of:

(i) Copyright;

(ii) Slogan; or

(iii) Title of any literary or artistic work; or

(b) Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

B. The following changes apply to Section G. LIABILITY AND MEDICAL EXPENSES DEFINITIONS:

1. The following definition is added:

"Unmanned aircraft" means an aircraft that is not:

a. Designed;

b. Manufactured; or

c. Modified after manufacture

to be controlled directly by a person from within or on the aircraft.

Form SS 42 06 03 1



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BUILDING LIMIT- AUTOMATIC INCREASE REVISION

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**
**STANDARD PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

A. Paragraph **C.5 Building Limit-Automatic Increase** of the **SPECIAL PROPERTY COVERAGE FORM** or **STANDARD PROPERTY COVERAGE FORM** is deleted.

B. The following is added to **Additional Coverages,** paragraph **A.5** of the **SPECIAL PROPERTY COVERAGE FORM** or paragraph **A.4.** of the **STANDARD PROPERTY COVERAGE FORM:**

**Building Limit - Automatic Increase**

a. If the covered loss or damage to Building property at a "scheduled premises" exceeds the Limit of Insurance stated in the Declarations, the Limit of Insurance available for the covered loss or damage in that occurrence will automatically increase by up to 8%.

b. The amount of increase will be:

(1) The Limit of Insurance for Buildings that applied on the most recent of the policy inception date, policy anniversary date, or the date of any other policy change amending the Building limit, multiplied by

(2) The 8% annualized percentage of Automatic Increase, expressed as a decimal

(08), multiplied by

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance for Buildings, divided by 365.

Example:

The applicable Limit of Insurance for Buildings is $100,000. The automatic increase percentage is 8%. The number of days since the beginning of the policy period (or last policy change) is 146.

The amount of increase is:

$100,000 X .08 X 146 divided by 365 = $3,200

Form SS 41 51 10 09

© 2009, The Hartford



**POLICY NUMBER:** 08 SBA AA1751

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

LOSS PAYEE

LOCATION 001 BUILDING 001

UNITED BANK
ISAOA / ATIMA
PO BOX 9020
WEST SPRINGFIEL   MA 01090
DESCRIPTION:  CONTENTS

LOCATION 001 BUILDING 001

PITNEY BOWES CREDIT CORP
PO BOX 856460
LOUISVILLE        KY 40285
DESCRIPTION:  BPP

LOCATION 001 BUILDING 001

BAYTREE LEASING COMPANY
15325 SE 30TH PL SUITE 100
BELLEVUE          WA 98007
DESCRIPTION:  LEASED EQUIPMENT

Form IH 12 00 11 85 T SEQ. NO. 001    Printed in U.S.A. Page 001
Process Date: 08/07/19                                    Expiration Date: 10/17/20

INSURED COPY



**POLICY NUMBER:** 08 SBA AA1751

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

ADDITIONAL INSURED - OWNER, LESSEES OR CONTRACTOR

00031

MARKET STREET PROF CENTER
GENERAL PARTNERS
67 MARKET STREET
SPRINGFIELD            MA 01103

UNITED BANK
ISAOA / ATIMA
PO BOX 9020
WEST SPRINGFIEL      MA 01090

*110020BAA17510120

Form IH 12 00 11 85 T SEQ. NO. 002      Printed in U.S.A. Page 001
Process Date: 08/07/19                                    Expiration Date: 10/17/20

INSURED COPY



# U.S. DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by the United States. **Please read this Notice carefully.**

The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States. OFAC acts under Presidential national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction. OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries. It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific. Collectively, such individuals and companies are called "Specially Designated Nationals and Blocked Persons" or "SDNs". Their assets are blocked and U.S. persons are generally prohibited from dealing with them. This list can be located on OFAC's web site at – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is an SDN, as identified by OFAC, the policy is a blocked contract and all dealings with it must involve OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

Form IH 99 40 04 09



THE
HARTFORD

**Named Insured:**   EGAN, FLANAGAN & COHEN, PC

**Policy Number:**   08 SBA AA1751

**Effective Date:**   10/17/19        **Expiration Date:**   10/17/20

**Company Name:**   TWIN CITY FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

All other terms and conditions remain unchanged.

Page 1 of 1

Form IH 99 41 04 09

# IMPORTANT NOTICE TO POLICYHOLDERS

## NOTIFICATION OF AVAILABILITY OF COVERAGE FOR FUNGUS/MOLD DAMAGE AS A RESULT OF OTHERWISE COVERED PERILS

The Massachusetts Division of Insurance requires that all residents and businesses of Massachusetts be provided the opportunity to purchase limited property insurance coverage for fungus/mold damages as a result of an otherwise covered peril.

The policy being offered, issued, or renewed may already provide this coverage.   If this coverage is not already provided to you it is available under a separate endorsement.

Please contact your insurance company or your agent to apply for this coverage.

**Page 1 of 1**

Form G-3406-0                                © 2006,  The Hartford



## PRODUCER COMPENSATION NOTICE



You can review and obtain information on The Hartford's producer compensation practices at www.TheHartford.com or at 1-800-592-5717.

Form G-3418-0

POLICY NUMBER: 08 SBA AA1751



**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| SCHEDULE |
|---|
| Terrorism Premium: |
| $      $125.00 |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, as amended (TRIA), we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for "certified acts of terrorism" under TRIA. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement.

**B.** The following definition is added with respect to the provisions of this endorsement:

1. A "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of TRIA, to be an act of terrorism under TRIA. The criteria contained in TRIA for a "certified act of terrorism" include the following:

   a. The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

   b. The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the

United States or to influence the policy or affect the conduct of the United States Government by coercion

**C. Disclosure Of Federal Share Of Terrorism Losses**

The United States Department of the Treasury will reimburse insurers for a portion of insured losses, as indicated in the table below, attributable to "certified acts of terrorism" under TRIA that exceeds the applicable insurer deductible:

| Calendar Year | Federal Share of Terrorism Losses |
|---|---|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 or later | 80% |

However, if aggregate industry insured losses under TRIA exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States government has not charged any premium for their participation in covering terrorism losses.

Page 1 of 2

Form SS 83 76 01 15            © 2015 , The Hartford
(Includes copyrighted material of the Insurance Services Office, Inc., with its permission.)

**D.  Cap On Insurer Liability for Terrorism Losses**

If aggregate industry insured losses attributable to "certified acts of terrorism" under TRIA exceed $100 billion in a calendar year and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of the amount of such losses that exceed $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro-rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

**E.  Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, the inapplicability or omission of a terrorism exclusion, or the inclusion of terrorism coverage, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Form, Coverage Part or Policy.

**F.  All other terms and conditions remain the same.**

Form SS 83 76 01 15



# IMPORTANT NOTICE TO POLICYHOLDERS

| ERISA - EMPLOYEE DISHONESTY |
| --- |

You are receiving this notice because your renewal policy contains ERISA-EMPLOYEE DISHONESTY.

The Employee Retirement Income Security Act of 1974 (ERISA) is a federal law that sets rules and standards of conduct for private sector employee benefit plans and those that invest and manage their assets. One of ERISA's requirements is that people who handle plan funds and other property must be covered by a fidelity bond to protect the plan from losses due to fraud or dishonesty.

Please be advised that on or before the beginning of each plan year, the plan administrator or other plan fiduciary must ensure that the plan has the legally required bonding amount for the individuals who will handle the plan's funds and other property. If necessary, the plan administrator or other plan fiduciary may need to obtain appropriate adjustments or additional protection to ensure that the coverage will be in compliance for the new plan year.

If you wish to adjust the amount of your ERISA fidelity bond, please reach out to your agent or Hartford representative.

Form SS 90 30 06 18                    © 2018, The Hartford

# IMPORTANT NOTICE TO POLICYHOLDERS

To help your insurance keep pace with increasing costs, we have increased your amount of insurance . . . giving you better protection in case of either a partial, or total loss to your property.

If you feel the new amount is not the proper one, please contact your agent or broker.

00016

\*1100208AA17510120

Form PC-374-0   Printed in U.S.A.

EXHIBIT _B_____

Law Offices Of
## Egan, Flanagan and Cohen, P.C.

67 Market Street
P.O. Box 9035
Springfield, Massachusetts 01102-9035


Phone: (413) 737-0260 • Telefax: (413) 737-0121
Web site: www.efclaw.com

John J. Egan
Maurice M. Cahillane
Robert L. Quinn
Richard J. Kos
Thomas E. Day*
Timothy J. Ryan
Lauren F. Olanoff
Michael G. McDonough°
Katie Manzi McDonough°
Kevin D. Withers
Katherine A. Day□
Mary K. Eaton*
Alyssa N. Sweeney*

*Senior Counsel*
  William C. Flanagan
  Mary B. Boland
  Theodore C. Brown
  Paula C. Tredeau°

James F. Egan
  (1896-1986)
Edward T. Collins
  (1902-1995)
Charles S. Cohen
  (1931-2004)

*Also admitted in CT
□Also admitted in FL
°Also admitted in TX
°Also admitted in NY

September 4, 2020


Mr. Dan Fontana
Chase, Clark, Stewart and Fontana
P.O. Box 9031
101 State Street, 8th Floor
Springfield, MA 01102

   RE: Employee Benefits Liability Claim

Dear Mr. Fontana:

  This is a request for coverage and defense in connection with a claim brought by Attorney Joseph A. Pacella, a retired partner in this firm, against both the Firm, as well as individual claims against two partners in this firm, John Egan and Maurice Cahillane. Attached is a copy of Joe Pacella's Complaint for Arbitration. Pursuant to the Firm's Employee Benefits Liability Policy we are requesting both defense and liability coverage for all the claims against the firm and the individuals.

  Joe Pacella was a member of the Firm for over 20 years and for many years he served as the Firm's Chief Financial Officer. In 2018 Joe sold his primary residence in Longmeadow, and he and his wife moved primarily to the Maine coast. Despite his physical relocation Joe continued in his roles with the firm and was a highly compensated member. In February 2020 Joe Pacella gave written notice that he intended to retire effective the end of the Firm's fiscal year, March 31, 2020, and as part of his notice he requested Deferred Compensation of $210,000 payable in 12 monthly installments effective April 2020. The Partnership Agreement states that the Partnership may agree to pay deferred compensation to departing Partners, and the Partnership Agreement sets out the parameters of any such payment and states that one of the factors to be considered is "the financial health of the Firm." The Firm voted to accept Joe's resignation, but deferred action on his Compensation request due to the fact that the Firm had already agreed to pay a deferred compensation and the uncertainty created by covid for this fiscal

September 4, 2020
Page 2

year. Further, given the significant financial disruption caused by covid, the Firm does not possess the financial resources to fund any additional deferred compensation at this point.

Joe Pacella is represented by the Boston firm of Hartley Michon Robb, and they filed a demand for Arbitration with American Arbitration Association on June 10, 2020. The Complaint has brought claims against the Firm, as well as claims against Maurice Cahillane (the Firm's managing partner) and Jack Egan. The claims allege a breach of fiduciary duty by the Firm, as well as Cahillane and Egan, a claim for tortious interference with contract and/or advantageous business relations against Cahillane and Egan, and a claim for breach of contract for employee benefits included in the contract. A copy of the Complaint is attached hereto.

The Firm is seeking to have coverage to defend the tort claims brought against it and the individual members.

Sincerely,

Maurice M. Cahillane
Managing Partner

Enclosures

15725-200102\392861

**EXHIBIT** C

Prepare. Protect. Prevail.™



**THE**
**HARTFORD**

Business Insurance
Employee Benefits
Auto
Home

Eastern General Liability & Auto Litigation Claim Center
P.O. Box 14263
Lexington, KY 40512-4263

October 6, 2020

Egan Flanagan & Cohen, P.C.
Attention: Tim Ryan
67 Market Street
Springfield, MA 01103

*CERTIFIED RETURN RECEIPT REQUESTED*
*REGULAR MAIL AND VIA E-MAIL: tjr@efclaw.com*

Re:    Joseph Pacella v. Egan Flanagan & Cohen, P.C., et al.
       Hartford Insured:     Egan Flanagan & Cohen, P.C.
       Claimant:             Joseph A. Pacella
       Date of Loss:         09/04/20 (as reported)
       Hartford Claim No.:   Y2K L 00585

Dear Mr. Ryan:

We acknowledge receipt of a Demand for Arbitration filed with the American Arbitration Association. The Demand for Arbitration is dated June 10, 2020 and was filed by the claimant, Joseph A. Pacella. The named respondents are Egan Flanagan & Cohen, P.C.; John J. Egan; and Maurice M. Cahillane. This matter was reported to The Hartford on September 8, 2020 and was our first notice of this matter. After a review of this matter, we hereby deny coverage for this matter. As such, we will not be providing either defense or indemnification to Egan Flanagan & Cohen, P.C.; John J. Egan; or Maurice M. Cahillane. The basis for our denial is as follows.

In the Demand for Arbitration, the claimant ("Pacella") alleges that this case arises from the unfair and disparate treatment of Pacella by his law firm of 24 years and his long-standing partners, John Egan ("Egan") and Maurice Cahillane ("Cahillane"), after Pacella informed Egan Flanagan & Cohen, P.C. ("the Firm") of his desire to retire from the Firm. It is alleged that pursuant to the terms of the Firm's Shareholder and Redemption Agreement ("Shareholder Agreement") and its past practices, retired shareholders are paid deferred compensation based

Page 1 of 10

solely upon, or primarily upon, their last annual base salary, and retired shareholders are permitted to remain employed at the Firm on a part-time basis thereafter, with continued compensation and other benefits.

Pacella claims that he fully complied with the terms of the Shareholder Agreement, and the retirement notice he submitted was consistent with those submitted by two other partners who had recently retired but despite this, he was subjected to disparate and unfair treatment, especially in light of his contributions to the Firm over the last 24 years when compared to those of the other two retiring partners, having sourced over $8.5 million dollars and produced on his personal billings over $6.8 million dollars for the Firm.

Pacella goes on to allege that Egan, who controls the Firm due to his significant sourcing of recent years has resentment towards Pacella, using false, inapplicable and inconsistent rationales, advocated that the Firm should not timely pay the deferred compensation, and that Pacella's post-retirement compensation for part-time work should be at a percentage inexplicably and significantly lower than the other two recent retired partners,.

It is alleged that the partners voted on February 28, 2020, to issue a response to Pacella's Retirement Notice, agreeing to some terms, while indefinitely deferring the Firm's decision on the two most significant items: Pacella's deferred compensation and his requested part-time employment post-retirement, both in breach of the Shareholder Agreement and the Firm's past practices.

It is further alleged that completely contrary to the Firm's past treatment of retired shareholders spanning many years, the Firm refused to allow Pacella to remain employed following his retirement on a part-time basis, and instead froze him out of the Firm entirely. In addition, Pacella remains listed on the Firm's website with his full biography, in no way indicating that he has retired, thus enabling the Firm to continue to trade on his good name without his permission.

It is also alleged that acting contrary to their fiduciary duties, the Firm, Egan and Cahillane had no legitimate business purpose for their actions concerning Pacella's deferred compensation and freezing Pacella out of the firm. As a result, Pacella alleges that he has suffered significant damages, including, but not limited to, lost deferred compensation owed under the Shareholder Agreement, lost compensation and benefits as a shareholder for another year, lost compensation and benefits as a part-time employee post retirement, other incidental and consequential harm, and emotional distress.

The claimant specifically alleges Breach of Fiduciary Duty; Breach of The Shareholder Agreement; Breach of Implied Contract; Breach of The Covenant of Good Faith And Fair Dealing; and Tortious Interference With Contractual and/or Advantageous Business Relations. The claimant seeks compensatory damages, attorneys' fees, and contractual and/or statutory interest.

Our investigation indicates that Pacella was a member of the Firm for over 20 years; and in 2018 he sold his primary residence and moved primarily to the Maine coast. Despite his physical relocation, he continued in his roles with the firm and was a highly compensated member. In

2

February 2020 he gave written notice that he intended to retire effective the end of the Firm's fiscal year on March 31, 2020. As part of his notice, he requested Deferred Compensation in the amount of $210,000.

Our investigation further indicates that the Partnership Agreement allows the Firm to pay deferred compensation to departing Partners; sets out the parameters of any such payment; and states that one of the factors to be considered is "the financial health of the Firm." The Firm voted to accept Pacella's resignation, but deferred action on his Compensation request due to the fact that the Firm had already agreed to pay a deferred compensation and the uncertainty created by COVID for this fiscal year. Further, given the significant financial disruption caused by COVID, the Firm does not possess the financial resources to fund any additional deferred compensation at this point.

The allegations were reviewed in conjunction with Egan Flanagan & Cohen, P.C.'s Commercial General Liability Policy issued by Twin City Fire Insurance Company ("Hartford") under policy number 08 SBA AA1751 with effective dates of October 17, 2019 through October 17, 2020. The primary policy provides limits of $1,000,000 per occurrence with an aggregate limit of $2,000,000. This primary policy also provides Employee Benefits Liability limits of $1,000,000 per occurrence with an Aggregate limit of $2,000,000. The pertinent policy forms are the **Business Liability Coverage Form** (SS00080405); the **Business Liability Coverage Form Amendatory Endorsement** (SS00600915); and the **Employee Benefits Liability-Occurrence** (SS40501008).

We refer you to the SS00080405-**Business Liability Coverage Form** which reads, in part, as follows:

    A. **COVERAGES**
        1. **Business Liability Coverage (Bodily Injury, Property Damage, Personal and Advertising Injury)**

           **Insuring Agreement**
           a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

We now refer you to the **Liability and Medical Expenses Definitions** section of the **Business Liability Coverage Form**, which reads in part as follows:

        5. "Bodily injury" means physical:
           a. Injury;
           b. Sickness; or
           c. Disease

3

sustained by a person and, if arising out of the above, mental anguish or death at any time.

16. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Personal and advertising injury"[1] means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor;
   d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e. Oral, written or electronic publication of material that violates a person's rights of privacy; or
   f. Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";
   g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

20. "Property damage" means:
   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
   As used in this definition, "electronic data" is not tangible property.

We now refer you to the following:

B. **EXCLUSIONS**
   **Applicable to Business Liability Coverage**
   This insurance does not apply to:
   a. **Expected Or Intended Injury**
      (1) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or
      (2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".
   b. **Contractual Liability**
      (1) "Bodily injury" or "property damage"; or

---

[1] As amended by the SS0060 0915 Business Liability Coverage Form Amendatory Endorsement

4

(2) "Personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages because of:

(a) "Bodily injury", "property damage" or "personal and advertising injury" that the insured would have in the absence of the contract or agreement;...

p. **Personal And Advertising Injury**

"Personal and advertising injury":

...

(4) Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement";

r. **Employment-Related Practices**

"Personal and advertising injury" to:

(1) A person arising out of any "employment–related practices"; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any "employment-related practices" are directed.

This exclusion applies:

(a) Whether the injury-causing event described in the definition of "employment-related practices" occurs before employment, during employment or after employment of that person;

(b) Whether the insured may be liable as an employer or in any other capacity; and

(c) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

We now refer you to the **Insuring Agreement** on page one of the **Employee Benefits Liability-Occurrence** coverage form which states in part:

A. **SECTION A – COVERAGES** is amended as follows

1. The following is added:   **EMPLOYEE BENEFITS LIABILITY** Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "employee benefits injury" committed by the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may at our discretion, investigate any act, error or omission and settle any "claim" or "suit" that my result. But:

(1) The amount we will pay for "damages" is limited as described in **SECTION D – LIMITS OF INSURANCE**; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

5

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under subsection 3. Coverage Extension - Supplementary Payments (SECTION A – COVERAGES) of the Business Liability Coverage Form.

b.  This insurance applies to an "employee benefits injury" only if:
(1) The "employee benefits injury" is committed in the "coverage territory"; and
(2) The "employee benefits injury" is committed during the policy period.

c.  All "claims" for damages made by an "employee" because of an "employee benefits injury", or a series of related "employee benefits injuries", including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to constitute a single "claim" for purposes of application of the Each Claim Limit of liability.

2.  For purposes of the coverage provided by this endorsement, subsection 3. Coverage Extension – Supplementary Payments, paragraphs 3.a.(2) and 3.b. (SECTION A – COVERAGES) do not apply.

Throughout this policy, words and phrases that appear in quotation marks have special meaning. We now refer you to **SECTION G – LIABILITY AND MEDICAL EXPENSES DEFINITIONS** on pages three through four for their meanings:

1.  Solely with respect to coverage provided by this Endorsement, the definitions of "employee" and "suit" are deleted and replaced by the following:
a.  "Employee" means a person actively employed, on leave of absence, disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".
b.  "Suit" means a civil proceeding in which damages because of an "employee benefits injury" to which this insurance applies are alleged. "Suit" includes:
(1) An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or
(2) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

2.  Solely with respect to coverage provided by this Endorsement, the following definitions are added:
a.  "Administration" means:
(1) Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of your "employee benefits programs";
(2) Handling records in connection with "employee benefits programs"; or
(3) Effecting, continuing or terminating any "employee's" participation in any benefit plan included in the "employee benefits program."
b.  "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

6

c. "Claim" means any demand, or "suit", made by any "employee" or an "employee's" dependents and beneficiaries, for damages as a result of an "employee benefits injury.

d. "Employee benefits injury" means injury that arises out of any negligent act, negligent error or negligent omission in the "administration" of your "employee benefits program."

e. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   (1) Group life insurance, group accident, group  health insurance, group dental insurance  group vision and group hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe for such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   (2) Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   (3) Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   (4) Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family and civil leave; tuition assistance plans; transportation and health club subsidies; and

   (5) Any other similar benefits designated in the Declarations or added thereto by endorsement.

We now refer you to **Section B. EXCLUSIONS** on page one of the Employee Benefits Liability-Occurrence which reads in part as follows:

**SECTION B – EXCLUSIONS** is amended to add the following:

3. **Applicable to Employee Benefits Liability**

   This insurance does not apply to:

   b. **Bodily Injury, Property Damage or Personal and Advertising Injury**

   "Bodily injury," "property damage," "personal injury" or "advertising injury."

   c. **Dishonest, Fraudulent, Criminal or Malicious Act**

   Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

   e. **Available Benefits**

   Any "claim" for benefits to the extent that such benefits are available with reasonable effort of the insured from the applicable funds accrued or other collectible insurance.

7

f.  **Insufficiency of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

## CONCLUSION:

Regarding the potential for coverage under the general liability insurance policy, in order for the claim to be covered, there must either be "bodily injury" or "property damage" caused by an "occurrence" or "personal and advertising injury" arising out of one or more of the offenses enumerated in the policy. The factual allegations of the complaint do not constitute "bodily injury" as that term is defined in the policy. The claimant did not sustain bodily injury, sickness or disease. Further, the factual allegations of the complaint do not constitute "property damage" as that term is defined in the policy. The claimant alleges neither physical injury to tangible property nor the loss of use of tangible property that is not physically injured. Moreover, the factual allegations of the complaint do not involve an "occurrence" or accident, as defined under your policy. Allegations of the failure to perform specified contractual obligations or scheming to defraud creditors do not constitute an accident. Finally, the factual allegations sets forth by the claimant do not constitute one of the enumerated offenses in the policy definition of "personal and advertising injury." The claimant alleges that defendants failed to provide Pacella with a deferred compensation amount or compensation for part-time employment post-retirement and froze him out of the Firm. Therefore, the Insuring Agreement of the general liability coverage has not been triggered and Hartford disclaims coverage on this basis. In addition, there are several exclusions that apply to eliminate coverage under the **Business Liability Coverage Form.**

Even if there was an "occurrence" of "bodily injury" or "property damage" or an offense of "personal and advertising injury", which we do not concede, the exclusion cited above related to Employment-Related Practices would apply.

Exclusion **a. Expected or Intended Injury** eliminates coverage for "bodily injury" or "property damage" which is expected or intended from the standpoint of the insured. This exclusion also eliminates coverage for "personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury". The claimant alleges that the Firm breached the Shareholder Agreement and he has lost deferred compensation owed under the Shareholder Agreement, lost compensation and benefits as a shareholder for another year and lost compensation and benefits as a part-time employee post retirement. The **Expected or Intended Injury** exclusion eliminates coverage for allegations of intentional conduct.

Exclusion **b. Contractual Liability**, underscores how "breach of contract" does not trigger your Insuring Agreement. This claim sounds in terms of breach of contract rather than a wrongful act or tort for damages caused by an "occurrence" of "property damage". It is not the intent of this policy to warrant your performance of the Shareholder Agreement and make compensation payments when due under your financial agreements. The **Personal And Advertising Injury** exclusion in part (4) eliminates coverage for "personal and advertising injury" arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your

8

"advertisement." The claimant alleges the defendants breached the Shareholder Agreement. Exclusion part **(4)** eliminates coverage for "personal and advertising injury" arising out of any breach of contract.

The claim does not qualify for coverage under your general liability insurance policy with The Hartford. The claim, as enumerated previously, arises from the allegations that Egan Flanagan & Cohen, P.C., John J. Egan, and Maurice M. Cahillane voted to accept Pacella's resignation, but deferred action on his Compensation request due to the fact that the Firm had already agreed to pay a deferred compensation and the uncertainty created by COVID for this fiscal year and given the significant financial disruption caused by COVID, the Firm does not possess the financial resources to fund any additional deferred compensation at this point.

***

The triggering language in the Insuring Agreement under the **Employee Benefits Liability-Occurrence** is: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'employee benefits injury' committed by the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies."

The policy defines "employee benefits injury" as injury that arises out of any negligent act, error or omission in the "administration" of your "employee benefits program". "Employee benefits injury" means injury that arises out of any negligent act, negligent error or negligent omission in the "administration" of your "employee benefits program." The claim does not fall within the the scope of the Insuring Agreement of the Employee Benefits Liability coverage form as there are no allegations of negligence in the Complaint. The claimant alleges that the Firm voted to indefinitely defer the Firm's decision on Pacella's deferred compensation and his requested part-time employment post-retirement. Subsequently, the Firm refused to allow Pacella to remain employed on a part-time basis following his retirement and froze him out of the firm entirely.

As noted, the policy defines "employee benefits injury" as injury that arises out of any negligent act, error or omission in the "administration" of your "employee benefits program". Regarding "administration", at the present time, there is no allegation of an error or omission in describing your "employee benefits programs" to "employees"; handling records in connection with "employee benefits programs"; or starting, continuing or stopping any employee's participation in the Firm's "employee benefits program." Therefore, the Insuring Agreement of the **Employee Benefits Liability Coverage** has not been triggered. In addition, there are several exclusions that would apply to eliminate coverage.

Exclusion **b.** eliminates coverage for "bodily injury," "property damage," "personal injury" or "advertising injury." To the extent that the claimant alleges "bodily injury", "property damage", "personal injury" or "advertising injury", the **Bodily Injury, Property Damage or Personal and Advertising Injury** exclusion would apply to eliminate coverage. Exclusion **c. Dishonest, Fraudulent, Criminal or Malicious Act** precludes coverage for any claim for damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured. To the extent that the claimant alleges damages arising out conduct by the defendants that is intentional, dishonest, fraudulent or malicious, exclusion **c.** would apply to preclude coverage. Exclusion **e. Available Benefits** eliminate coverage for any "claim" for

9

benefits to the extent that such benefits are available with reasonable effort of the insured from the applicable funds accrued or other collectible insurance. Finally, exclusion **f. Insufficiency of Funds** eliminates coverage for damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program". Therefore, even if the claim did fall within the scope of the Insuring Agreement of the **Employee Benefits Liability-Occurrence,** which we do not concede, the aforementioned exclusions related to **Bodily Injury, Property Damage or Personal and Advertising Injury; Dishonest, Fraudulent, Criminal or Malicious Act; Available Benefits;** and **Insufficiency of Funds** would apply to eliminate coverage.

If you have other insurance available to you, we recommend that you place that carrier on notice of this incident.

Please be advised that this correspondence is not limited to and should not be construed as an exhaustive listing or decision of the policy terms, conditions or exclusions that might limit or preclude coverage for this matter. The Hartford does not waive any right available to it in this matter.

If you have any questions regarding our coverage position, or take exception to it, please advise me immediately of the basis for your disagreement. If there are any additional facts that you feel would alter The Hartford's coverage position please advise as to those facts immediately.

Very truly yours,

Patrick Scherer

Claim Consultant
Writing Company: Twin City Fire Insurance Company
Direct: 407-871-4727
Toll Free: 888-525-2652 ext 2308080

cc: CHASE CLARKE STEWART & FONTANA INC.
    101 STATE STREET,
    SPRINGFIELD, MA, 01102

10

# EXHIBIT D

Law Offices Of

## Egan, Flanagan and Cohen, P.C.

67 Market Street
P.O. Box 9035
Springfield, Massachusetts 01102-9035

Phone: (413) 737-0260 • Telefax: (413) 737-0121
Web site: www.efclaw.com

John J. Egan
Maurice M. Cahillane
Robert L. Quinn
Richard J. Kos
Thomas E. Day*
Timothy J. Ryan
Lauren F. Olanoff
Michael G. McDonough°
Katie Manzi McDonough°
Kevin D. Withers
Katherine A. Day□
Mary K. Eaton*
Alyssa N. Sweeney*

*Senior Counsel*
   William C. Flanagan
   Mary E. Boland
   Theodore C. Brown
   Paula C. Tredeau◊

James F. Egan
   (1896-1986)
Edward T. Collins
   (1902-1995)
Charles S. Cohen
   (1931-2004)

*Also admitted in CT
□Also admitted in FL
◊Also admitted in TX
°Also admitted in NY

October 7, 2020

**VIA EMAIL (Patrick.Scherer@thehartford.com) AND
CERTIFIED MAIL – RRR #7018-2290-0001-6170-0514**

Patrick Scherer, Claim Consultant
The Hartford
Eastern General Liability
P.O. Box 14263
Lexington, KY 40512-4263

RE:   **Joseph A. Pacella v. Egan, Flanagan and Cohen, P.C., John J. Egan, and
      Maurice M. Cahillane
      Hartford Claim No. Y2K L 00585**

Dear Mr. Scherer:

This is in response to your letter of October 6, 2020, which purports to be a denial of coverage for a defense or indemnification under the insured's Commercial General Liability Policy No. 08 SBA AA1751. We, of course, do not accept your conclusions which are not in conformance with Massachusetts law. We assume you will be filing a Declaratory Judgment Action as Massachusetts case law indicates is your obligation. *Sterilite Corp. v. Cont'l. Cas. Co.*, 17 Mass. App. Ct. 316 (1983). If not, we will and intend to file and seek fees and costs if successful.

There is, however, a glaring omission in your analysis. While you acknowledge a "duty to defend" exists in the policy, you utterly fail to go through the separate analysis required under Massachusetts law concerning that separate contractual obligation. As our Courts have held, "[i]t is axiomatic that an insurance company's duty to defend is broader than its duty to indemnify." *Boston Symphony Orch., Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 10 (1989). As that case notes, the statutory obligations of G.L. c. 93 and c. 176D may be implicated where outside coverage counsel is not engaged. Our burden concerning your obligation to defend is satisfied by a showing of a mere "possibility of coverage." *Billings v. Commerce Ins.*

Patrick Scherer, Claim Consultant
The Hartford
October 7, 2020
Page 2

*Co.*, 458 Mass. 194, 201 (2010).  That case describes your obligation is to provide a defense
where the underlying allegations are "reasonably susceptible of an interpretation that states or
roughly sketches a claim covered by the policy terms." *Id.* at 200.  Your analysis on page 9 of
your letter acknowledges such a rough sketch of a claim as a result of your conclusion that an
"error" or "omission" in the administration of an employee benefit program is alleged.  The
arbitration demand's core claims are that EFC failed to hold an immediate meeting to vote on
Mr. Pacella's claimed benefit and also omitted applying the correct criteria in its analysis of his
benefit.  The following cited exclusions, as we all know, are strictly construed against the carrier.
This is merely one example of multiple other rough sketches of claims.

The purpose of this letter is to give you the opportunity to explain your position on your
apparent rejection of a defense to your insured (EFC).  Further to explain why you elected not to
proceed under a reservation of rights and the contemporaneous filing of a Declaratory Judgment
as recommended by the Courts of the Commonwealth.

All of the above, coupled with the failure to seek outside counsel's coverage advice on
this matter, raises the issue of unfair claims practice in the context of first party coverage.

We await your reply.

Very truly yours,

John J. Egan

JJE/lap

Cc:   Maurice M. Cahillane, Esq.
      Timothy J. Ryan, Esq.
      Michael G. McDonough, Esq.
      Chase Clarke Stewart & Fontana Inc.

0623-200444\402221

# EXHIBIT __E__

Prepare. Protect. Prevail.™



**THE HARTFORD**

Business Insurance
Employee Benefits
Auto
Home

November 23, 2020

Egan Flanagan & Cohen, P.C.
Attention: John J. Egan
67 Market Street
Springfield, MA 01103

*VIA E-MAIL: jje@efclaw.com*

Re:     Joseph Pacella v. Egan Flanagan & Cohen, P.C., et al.
        Hartford Insured:      Egan Flanagan & Cohen, PC
        Claimant:              Joseph A. Pacella
        Date of Loss:          09/04/20 (as reported)
        Hartford Claim No.:    Y2K L 00585
        Policy:                08 SBA AA1751 ("Policy")

Dear Mr. Egan:

Twin City Fire Insurance Company ("Hartford") writes in response to your October 7, 2020 letter wherein you argue that Hartford has a duty to defend Egan, Flanagan & Cohen, PC ("EFC"), John Egan and Maurice Cahillane with respect to an arbitration petition captioned *Joseph A. Pacella v. Egan, Flanagan & Cohen, P.C.; John J. Egan; and Maurice M. Cahillane* filed with the American Arbitration Association and dated June 10, 2020 (the "Arbitration"). Hartford disclaimed coverage for the Arbitration in its letter dated October 6, 2020. In your October 7, 2020 letter, you request that Hartford reconsider its disclaimer of coverage. Based on our review of your letter, the Policy and the Complaint in the Arbitration, Hartford must respectfully maintain the position outlined in its letter dated October 6, 2020, which we fully incorporate by reference. This letter supplements Hartford's October 6, 2020 letter.

209194140_1 LAW                      Page 1 of 3

As indicated in Hartford's October 6, 2020 letter, Hartford issued a Commercial General Liability Policy to EFC under policy number 08 SBA AA1751 with effective dates of October 17, 2019 through October 17, 2020. The Policy provides limits of $1,000,000 per occurrence with an aggregate limit of $2,000,000. The Policy also provides Employee Benefits Liability limits of $1,000,000 for each claim with an aggregate limit of $2,000,000. The pertinent policy forms are the Business Liability Coverage Form (SS 00 08 04 05); the Business Liability Coverage Form Amendatory Endorsement (SS 00 60 09 15); and the Employee Benefits Liability-Occurrence (SS 40 50 10 08).

In your letter, you contend that there is a "glaring omission" in Hartford's October 6, 2020 letter because Hartford failed to undertake the "separate analysis required under Massachusetts law concerning the separate contractual obligation" of an insurer's duty to defend, rather than indemnify. Hartford disagrees with your contention. In disclaiming coverage, Hartford has analyzed the allegations in the Arbitration, as well as any facts known to Hartford which may aid in interpreting the allegations in the Arbitration, and compared those allegations and facts to the Policy. *See House of Clean Inc. v. St. Paul Fire & Marine Ins. Co.*, 705 F. Supp. 2d 102, 109 (D. Mass. 2010) ("Known or knowable extrinsic facts, such as those set forth in demand letters, therefore, serve to aid the interpretation of the underlying pleadings and can add substance and meaning to otherwise skeletal third-party claims. Extrinsic evidence cannot, however, provide independent grounds for a duty to defend."). Although the duty to defend is indeed broader than the duty to indemnify, there is no duty to defend where the allegations in the underlying complaint "lie expressly outside the policy coverage and its purpose . . . ." *Nguyen v. Arbella Insurance Group*, 91 Mass. App. Ct. 565, 568 (2017). Furthermore, "[a]n insured bears the initial burden of proving that the claimed loss falls within the coverage of the insurance policy." *Central Mut. Ins. Co. v. True Plastics, Inc.*, 84 Mass. App. Ct. 17, 22 (2013).

Hartford maintains its position that there is no coverage for the Arbitration under the Business Liability Coverage Form, form SS 00 08 04 05, because there is no allegation of "bodily injury", "property damage" or "personal and advertising injury" in the Arbitration. The Arbitration also does not allege an "occurrence" as defined by the Policy. Lastly, even if there were allegations of "bodily injury" or "property damage" caused by an "occurrence" or an enumerated "personal and advertising injury" offense, several exclusions would apply to preclude coverage as stated in Hartford's October 6, 2020 letter. You do not appear to contest Hartford's denial of coverage under the Business Liability Coverage Form. If this is incorrect, please let me know at your earliest convenience.

Moreover, Hartford maintains its position that there is no coverage for the Arbitration under the Employee Benefits Liability – Occurrence coverage form, form SS 40 50 10 08 (the "EBL Form"). The EBL Form indicates, in relevant part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'employee benefits injury' committed by the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies." "Employee benefits injury" is defined as "injury that arises out of any negligent act, negligent error or negligent omission in the 'administration' of your 'employee benefits program'". As previously indicated, there is no allegation in the Arbitration of a negligent act, negligent error or negligent omission in the administration of an "employee benefit program". Thus, coverage under the EBL Form is not triggered.

2

Furthermore, even if the Arbitration alleged an "employee benefits injury", which it does not, coverage would only exist for the "administration" of an "employee benefit program", which is defined, in part, as "a program providing some or all of the following benefits to 'employees' . . . ." Hartford reserves all rights with respect to whether Mr. Pacella is claiming benefits as an "employee" under the Policy. Indeed, Mr. Pacella claims benefits as a shareholder of EFC. Likewise, Hartford reserves all rights with respect to whether the partnership agreement qualifies as an "employee benefit program" as that term is defined in the Policy. If Mr. Pacella is not claiming benefits as an "employee", or if the partnership agreement is not an "employee benefit program", there would be no coverage for the Arbitration.

Additionally, even if EFC met its burden of proving that the allegations of the Arbitration triggered Hartford's duty to defend in the first instance, which it has not, several exclusions would apply to preclude coverage as stated in Hartford's October 6, 2020 letter.

Lastly, we disagree with your contention that, pursuant to *Sterlite Corp. v. Continental Casualty Co.*, 17 Mass. App. Ct. 316 (1983), an insurer must file a declaratory judgment action whenever it denies coverage. In *Sterlite Corp.*, the court held that, where an insurer has a duty to defend based upon the allegations in the operative complaint, the insurer can relieve itself of that duty if it "demonstrates with conclusive effect . . . that as a matter of fact – as distinguished from the appearances of the complaint and policy – the third party cannot establish a claim" within coverage. *Id.* at 323. Filing a declaratory judgment action is one mechanism available to an insurer attempting to establish that coverage does not exist. However, *Sterlite Corp.* does not stand for the proposition that an insurer must file a declaratory judgment whenever it denies coverage. Nevertheless, Hartford reserves all rights available to it, including but not limited to the ability to file a declaratory judgment action regarding this coverage dispute.

For the foregoing reasons Hartford must respectfully maintain its disclaimer of coverage in this matter. Hartford hereby reserves all rights, positions and defenses in this matter. Hartford reserves the right to supplement, modify and amend its position as new facts are learned or allegations made. Hartford does not waive any coverage defenses available to it, either under the Policy or at law, by failing to cite them in this correspondence. If you have information you feel would alter our position, please let me know.

Very truly yours,

Christopher A. Klepps, Esq.
Senior Counsel

Cc: Patrick Scherer (patrick.scherer@thehartford.com)
    James H. Stewart (jstewart@chaseins.com)

3

209194140_1 LAW